Valdez DAVIS *v.* ARKANSAS DEPARTMENT of HEALTH
& HUMAN SERVICES

CA 06-1300                                     254 S.W.3d 762

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

[Rehearing denied May 9, 2007.]

*Benjamin Poole*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

DAVID M. GLOVER, Judge. Appellant, Valdez Davis, appeals from the termination of her parental rights to three of her six children, B.D., K.D., and K.D., following a termination hearing on September 5, 2006. She contends that 1) the trial court did not have subject-matter jurisdiction over the case and erred by not following the Uniform Child Custody Jurisdiction and Enforcement Act, and 2) the trial court erred in finding aggravated circumstances and terminating her parental rights. We affirm.

Appellant and her children moved to Arkansas in September 2005 when they were displaced by Hurricane Katrina. Allegations of physical abuse arose concerning the children after their arrival in Arkansas, and appellee, DHHS, began an investigation. On January 13, 2006, a seventy-two-hour hold was initiated as a result of the investigation. The probable-cause hearing was held on January 24, 2006. The trial court found that there was probable cause to believe that the emergency conditions that necessitated removal of the children from appellant's custody continued, making it necessary for the children to remain in DHHS custody. The adjudication hearing was scheduled for March 13, 2006. In the interim, appellant returned to the state of Louisiana. She was not present at

the adjudication hearing in Arkansas, despite being properly notified. The trial court determined at that hearing that the children were dependent-neglected.

On June 19, 2006, a petition to terminate parental rights was filed, and the hearing on the petition was held on September 5, 2006, with appellant in attendance. Following the hearing, the trial court ordered termination of appellant's parental rights to B.D., K.D., and K.D., along with termination of the parental rights of Leroy Johnson, the putative father of B.D., and of Albert Lawson, the putative father of K.D. and K.D.

### Subject-Matter Jurisdiction

According to Arkansas Code Annotated section 9-19-102(4) (Repl. 2002), dependent-neglect cases are regarded as child-custody cases. Child-custody jurisdiction is a matter of subject-matter jurisdiction. *Moore v. Richardson*, 332 Ark. 255, 964 S.W.2d 377 (1998). Consequently, subject-matter jurisdiction is established pursuant to the terms of the UCCJEA, which is the exclusive method for determining the proper forum in child-custody proceedings involving more than one jurisdiction. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003).

For her first point of appeal, appellant contends that the trial court erred in exercising subject-matter jurisdiction in this case beyond the initial emergency proceeding. She asserts:

> Given the fact the children had only been in the State of Arkansas for approximately four (4) months when the action was commenced the proper jurisdiction for this case is Louisiana, as the defendant and juveniles had lived there for six (6) months continuously prior to their arrival in Arkansas. . . . The appellant acknowledges that the trial court acted in compliance with the UCCJEA under the emergency jurisdiction statute A.C.A. 9-19-204. . . . It is not the appellant's position that the initial proceedings lacked jurisdiction, rather, that the emergency passed and was extinguished by the children being placed in the custody of the Department of Health and Human Services. After the trial court granted an emergency custody order steps should have been taken to follow the UCCJEA but that did not occur. Emergency jurisdiction should not be used to modify a custody order permanently but may be used to enter a temporary order giving a party custody only for as long as it takes to travel with the child to the proper forum to seek a permanent modification of custody. Given that there had been a

previous case in Louisiana there was certainly a custody order entered. The modification of that order adds emphasis to the argument that Louisiana should have been contacted concerning these juveniles. Jurisdiction after the emergency had been extinguished was only proper in the children's home state, namely Louisiana.

(Citations omitted.) In short, appellant does not challenge the Arkansas court's initial exercise of emergency jurisdiction; rather, she contends that as soon as the initial emergency-custody order was entered, steps should have been taken to contact the Louisiana court for it to decline jurisdiction under section 9-19-201(a)(3) (Repl. 2002) before subject-matter jurisdiction could be properly established in Arkansas. We find no error.

Although appellant asserts that "there had been a previous case in Louisiana" and that therefore "there was certainly a custody order entered," there was no proof of that fact other than appellant's vague testimony:

> Prior cases in Louisiana? Which, through DHS? I've only had two (2). One was when I was real young. I left my first three (3). I had gotten to a point where I had felt as though I was over my head, and I didn't actually have nobody to turn to, and I left out the house, by their selves. The other one, I was accused of hitting my daughter with a hammer. With a claw hammer. The case had been closed. Yeah there had been an open case. Yes in Louisiana before that. It's been over five (5) years. I had started getting mental health treatment and counseling through that case. And they helped me get housing and everything. That lasted like nine (9) months — they gave me nine (9) months for me to get — start getting everything together. The children were placed with my mother. There's where [K.D.] almost got raped at. I was accused of striking her with a hammer. A neighbor told 'em I hit my daughter with a hammer. Yes, I've been through all of the services to address that issue. Yes, this case that we're dealing with today is because of allegations that I struck my children again. No, because at the time, before like I said, there was nothing available for services. When I went back I was under the impression that they said that they had, uh, everything there hadn't started back up, and that there are some of these things that was opened. And at the time I didn't even know about me havin' to take these, uh, parenting classes, and all this other stuff, prior to me goin' back to New Orleans. This case is open because I hit my daughter. Yes, that's the only reason.

Arkansas Code Annotated section 9-19-201 (Repl. 2002), provides in pertinent part:

(a) *Except as otherwise provided in § 9-19-204*, a court of this state has jurisdiction to make an initial child-custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

(A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

(Emphasis added.) The first clause of section 9-19-201(a), emphasized above, makes it clear that the provisions of this section are only applicable if the provisions of section 9-19-204 are not. Arkansas

Code Annotated section 9-19-204 (Repl. 2002), addresses temporary-emergency jurisdiction, and provides:

(a)  A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b)  If there is no previous child-custody determination that is entitled to be enforced under this chapter, and a child-custody proceeding has not been commenced in a court of a state having jurisdiction under §§ 9-19-201 – 9-19-203, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 9-19-201 – 9-19-203.  If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under §§ 9-19-201 – 9-19-203, a child-custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c)  If there is a previous child-custody determination that is entitled to be enforced under this chapter, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under §§ 9-19-201 – 9-19-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 9-19-201 – 9-19-203.  The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d)  A court of this state which has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction under §§ 9-19-201 – 9-19-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to §§ 9-19-201 – 9-19-203, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the

emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

In addition, Arkansas Code Annotated section 9-19-209 (Repl. 2002), requires the parties to identify the court, case number, and date of any prior child-custody determination, if any. Specifically, it provides:

(a) In a child-custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

(1) has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child-custody determination, if any;

(2) knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; and

(3) knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

(b) If the information required by subsection (a) of this section is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

(c) If the declaration as to any of the items described in subdivisions (a)(1)-(3) of this section is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and other matters pertinent to the court's jurisdiction and the disposition of the case.

(d) Each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding.

(e) If a party alleges in an affidavit or a pleading under oath that the health, safety, or liberty of a party or child would be jeopardized by disclosure of identifying information, the information must be sealed and may not be disclosed to the other party or the public unless the court orders the disclosure to be made after a hearing in which the court takes into consideration the health, safety, or liberty of the party or child and determines that the disclosure is in the interest of justice.

Here, there is no credible evidence in the record that conclusively indicates that another custody order or current custody proceeding existed with respect to these three children. There is nothing in the record to indicate that a competing custody order was ever identified in accordance with Arkansas Code Annotated section 9-19-209 (Repl. 2002), and no certified copy of any such Louisiana custody order was ever registered with the Arkansas court in accordance with Arkansas Code Annotated section 9-19-305. At most, appellant's testimony recounted that more than five years ago she was involved in a case in Louisiana because a neighbor reported that she hit her daughter with a claw hammer. According to appellant, that case had been closed.

As set out above, appellant concedes that the trial court had valid temporary-emergency jurisdiction. The UCCJEA does not require a trial court who has assumed temporary jurisdiction to return custody to a parent where there is no competing custody order. Here, in the absence of any competing custody order or petition in Louisiana, the provisions of Arkansas Code Annotated section 9-19-204(b) applied, and Arkansas then became the home state of the three children. We hold, therefore, that the trial court acted correctly when it continued to exercise subject-matter jurisdiction in this case, and that such jurisdiction existed when the termination order was entered.

*Termination of Parental Rights*

*Standard of Review*

This court reviews termination of parental rights cases *de novo*. *Yarborough v. Arkansas Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). The grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the trial

court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Kight v. Arkansas Dep't of Human Servs.*, 94 Ark. App. 400, 231 S.W.3d 103 (2006). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2005), provides in pertinent part:

> (3)  An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (A)  That it is in the *best interest* of the juvenile, including consideration of the following factors:
>
> (i)  The likelihood that the juvenile will be adopted if the termination petition is granted;  and
>
> (ii)  The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents;  and
>
> (B)  Of one (1) or more of the following grounds:
>
> . . . .
>
> (ix)(a)  The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:
>
> (3)(A)  Have subjected any juvenile to aggravated circumstances.

(Emplasis added.)

### Best Interests

For her second point of appeal, appellant contends that "the limited testimony on the adoptability of the children did not meet the clear and convincing standard [because the case worker's

testimony about B.D.'s] adoptability was based on a hope that therapy would produce a 'good,' 'positive' child . . . [and] that his adoptability was based in future hope rather than present fact." We disagree.

First, we note that appellant's argument under this subsection focuses upon the testimony concerning the adoptability of B.D., rather than all three children. Lena Smith-Broome, a DHHS family-service worker, testified that the emergency hold on three of appellant's children was initiated in January of 2006 based on allegations of physical abuse. Two of the three children, K.D. and K.D., are nine-year-old twins. The third child, B.D., is ten years old. Ms. Smith-Broome testified that in her opinion it was in the children's best interests to terminate the parental rights and to allow the children to have an opportunity to "unlearn" their aggressive, destructive behaviors. She explained that she had interacted with them and that they were sweet children. She stated that she thought "working with the children with their therapy . . . that they can be adopted." On cross-examination, she acknowledged that B.D. had physically assaulted his therapeutic foster mother and, as a result, had been sent to the juvenile-detention center. She explained, however, that his actions in that regard did not represent the whole child and that working with a child in therapy and helping him unlearn negative behavior produces a good child. When asked if her opinion would differ if, in a hypothetical situation, B.D. had attacked his foster mother with a knife rather than with his fists, Ms. Smith-Broome testified that she would still feel that with therapy to find out where the aggression was coming from, every child has an opportunity to improve. She maintained her position that B.D. was a sweet child and that he was very adoptable.

■ In *McFarland v. Arkansas Department of Human Services*, 91 Ark. App. 323, 327, 210 S.W.3d 143, 147 (2005), our court explained:

> Pursuant to the statute, termination of parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the child, including consideration of such factors as the likelihood of adoption of the child. *See* Ark. Code Ann. 9-27-341(b)(3). Appellant conceded in his brief that adoptability of the children is but one factor to consider in the overall termination of one's parental rights. There is no requirement that every factor considered be established by clear and convincing evidence; rather,

after consideration of all factors, the evidence must be clear and convincing that the termination is in the best interest of the child. It would indeed be ironic if, having perpetrated the abuse which resulted in R.M.'s disabilities, appellant could then in turn use those disabilities as the sole basis to prevent the termination of his parental rights.

Here, we find no clear error in the trial court's determination that it was in all three children's best interests to terminate appellant's parental rights.

### Aggravated Circumstances

In addition, appellant contends that the trial court erred in finding that the children had been subjected to aggravated circumstances as a ground for termination. The specific aggravating circumstance that appellant challenges is the trial court's finding that there was little likelihood that services to the family would result in successful reunification. We find no error.

"Aggravated circumstances" is defined in pertinent part:

> (i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, *or* a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

Ark. Code Ann. § 9-27-341 (Supp. 2005) (emphasis added).

First, we note that the statute's use of the term "or" makes it clear that the State does not have to prove both circumstances in order to establish aggravated circumstances. In the dependency-neglect adjudication order, the trial court found that appellant had "engaged in repeated cruelty to the juveniles, in that the mother had repeatedly struck the juveniles and punched the juveniles in the face and about the body"; that "the mother caused non-accidental physical injury to the juveniles, [K.D. and K.D.]" including "the mother struck the juvenile, K.D., on the face, causing bruises on the right cheek and her lip to split and bleed"; that "the mother intentionally interfered with a child's breathing, by choking the juvenile, [K.D.]"; that "the mother failed to protect the juveniles from non-accidental physical abuse," including "the mother's live-in boyfriend struck the juvenile, [K.D.], on

the face, without justification, causing the juvenile's lip to split and swell[.]" Appellant did not appeal the adjudication order.

In addition, appellant does not challenge in the instant appeal the trial court's findings in the termination order concerning her treatment of the children. Specifically, the trial court concluded that appellant's discipline techniques were beyond reasonable and moderate, finding that "the testimony of Ruth Peeler indicates that she observed the mother require [K.D.] to kneel on the ground with her nose to the wall and hands behind her back, and would strike the child in the face while the child was in this position," and "the testimony of Larry Mast indicates that he observed the mother require [D.D.], an older sibling of the juveniles, to kneel on the ground with his nose to the wall and hands behind his back, and this continued without interruption, in excess of ninety (90) minutes." The trial court also noted appellant's own testimony concerning hitting one of her children with a claw hammer. Accordingly, on this basis alone we find no clear error in the trial court's determination that appellant subjected the children to aggravated circumstances.

Furthermore, even on the basis specifically challenged by appellant, we find no clear error in the trial court's finding that there was little likelihood of successfully reuniting appellant with her children. The trial court listed many examples of the ways in which appellant had failed to comply with efforts to reunite her with her children. For example, the trial court found that appellant was offered assistance from various entities while she was in Arkansas but that she did not follow through with those offers; that she left Arkansas and returned to Louisiana, despite the fact that she knew Louisiana was unable to provide necessary services to her because of Hurricane Katrina; that she was not credible in her testimony concerning her inability to complete basic case-plan goals, such as obtaining housing and employment; that she had remained unemployed over the previous two years; that she testified she had been working on obtaining her GED for eighteen months but had failed to obtain it; and that throughout this matter she had failed to substantially comply with the case-plan goals. The trial court concluded that "given the services that have been provided, the mother's failure to comply with or seek services, either through the State of Arkansas or the State of Louisiana, and the subsequent lack of any significant progress shown throughout this matter, there is little likelihood that continuing to offer

services will result in successful reunification." We find no clear error in the trial court's determination.

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.