Ruben SMITH  *v.*  ARKANSAS DEPARTMENT of HEALTH
and HUMAN SERVICES

CA 07-335                                                    264 S.W.3d 559

Court of Appeals of Arkansas
Opinion delivered October 3, 2007

*Therese M. Free*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Merry Alice Hesselbein*, attorney ad litem.

JOHN B. ROBBINS, Judge. Appellant Ruben Smith appeals the termination of his parental rights to his daughter, JS (born 7-31-05). He argues that: 1) the trial court erred in allowing the Arkansas Department of Health and Human Services (DHHS) to amend the termination petition on the day of the termination hearing; 2) there was insufficient evidence to terminate his parental rights; 3) the trial court's termination order improperly referred to evidence presented at prior hearings. We affirm.

### Factual Background

Our factual recitation is taken from the court's termination order and other matters in the record, which Smith designated on appeal to include all pleadings, motions, reports, exhibits, orders, and case plans from October 13, 2005 (the date of the probable-cause order), to January 9, 2007 (the date of the termination order).

On October 7, 2005, JS, then less than three months old, tested positive for cocaine at Arkansas Children's Hospital. Within days, DHHS removed the child from the custody of her mother, Katrina Harden, and on October 13, 2005, the trial court entered a probable-cause order continuing custody in DHHS. The court directed that paternity be established as to JS and two other of Ms. Harden's children, and an adjudication hearing was set for December 5, 2005.

Smith acknowledged paternity of JS, and he appeared at the December 5 adjudication hearing. JS was found dependent/neglected based on her testing positive for cocaine and her mother's drug use.[1] The court, having already entered orders pertaining to Ms. Harden, ordered Smith to obtain stable housing, employment,

---

[1] Between October 2005 and December 2005, Ms. Harden repeatedly tested positive for cocaine, marijuana, or both.

and income; to keep DHHS informed of his address, telephone numbers, and employment; to have random drug screens; and to undergo a drug and alcohol assessment. Smith was also referred for a GED. Supervised visitation was established for both parents. The goal of the case was reunification, with a review hearing set for March 29, 2006.

A report prepared by DHHS for the review hearing shows that Smith had not started working on his GED; was living with his aunt; had obtained temporary employment at a video store; had visited JS; and continued to test positive for drugs. After the hearing, the court continued custody in DHHS and suspended visitation until the parents could comply with the court's orders. A permanency-planning hearing was set for September 20, 2006.

On August 14, 2006, DHHS filed a petition to terminate Smith's and Ms. Harden's parental rights. The petition alleged that returning JS to her parents was not in her best interest and was contrary to her health, safety, and welfare; that returning her to her parents could not be accomplished in a reasonable period of time as viewed from her perspective; that JS was found dependent/neglected "as the result of neglect and/or abuse that could endanger [her life] which was perpetrated by the juvenile's mother"; that other factors or issues arose subsequent to the filing of the original dependency-neglect petition demonstrating that returning JS to the custody of her parents was contrary to her health, safety, and welfare; and that, despite the offer of appropriate family services, the parents manifested the incapacity or indifference to remedy the subsequent issues or rehabilitate their circumstances.

The permanency-planning hearing proceeded on September 20, 2006. Smith and Ms. Harden tested positive for drugs on that date. A DHHS report stated that Smith had not started working on his GED and that the caseworker could not tell if Smith was employed. Further, visitation with JS remained suspended. The trial court found that neither Smith nor Ms. Harden was in compliance with court orders or the case plan, and the goal of the case was changed to termination of parental rights. A termination hearing was set for November 20, 2006.

Smith did not appear at the termination hearing but was represented by counsel. At the beginning of the hearing, counsel objected when DHHS moved to amend its termination petition to add that JS had "been in the Department's custody for twelve

months or longer." The trial court allowed the amendment, stating that all participants in the case were aware that JS had been in DHHS custody for over a year.

The hearing went forward with testimony from adoption specialist Monica Spencer that the likelihood of adoption for JS and the other children was "very possible." DHHS caseworkers testified that they had experienced difficulty maintaining contact with Smith since September 2006. Caseworker Linda Marshall testified that, when visitation with JS was allowed, Smith's visits were inconsistent. She also said that he continually tested positive for drugs; that he did not follow up on recommendations after receiving a drug-and-alcohol assessment; and that he was not working, as far as she knew. Marshall said further that JS had remained in DHHS custody since October 2005, and she recommended termination of parental rights. The ad litem attorney introduced into evidence certified copies of the court's probable-cause and adjudication orders. The court also made a finding of reasonable efforts by DHHS without objection by Smith.

On January 9, 2007, the court entered an order terminating Smith's parental rights to JS.[2] The court recited a detailed history of its prior orders and the evidence adduced at the termination hearing and mentioned some evidence from prior hearings. It found that Smith had been inconsistent in visiting JS; that he failed to appear at the termination hearing; that he had multiple, positive drug tests; and that he failed to "engage in the simplest of services." Under those circumstances, the court said, reunification would be unlikely even if services continued. The court also noted that, despite court-ordered services and intervention, Smith did not maintain meaningful contact with JS and did not rehabilitate himself to the point where reunification was a viable option. Further, the court said, JS had been in foster care since October 2005; she was "young and adoptable"; and she should not have to "languish" in foster care due to the "inaction of the adults in this case." The court then concluded that it was in JS's best interest to terminate Smith's parental rights. Smith filed a timely notice of appeal.

---

[2] The court also terminated Ms. Harden's parental rights to JS and two other children and terminated the parental rights of the putative fathers of those children. The only termination at issue in this appeal is the termination of Smith's parental rights to JS.

### Preliminary Argument by DHHS

We first address DHHS's argument that "the appeal should be dismissed because the record is deficient." DHHS refers to the fact that Smith's addendum does not contain all relevant pleadings, orders, and exhibits.

In support of its argument, DHHS cites *Busbee v. Arkansas Department of Health & Human Services*, 369 Ark. 416, 255 S.W.3d 463 (2007), where our supreme court dismissed an appeal in a termination-of-parental-rights case because the appellant, proceeding under the relatively new Ark. Sup. Ct. R. 6-9, failed to include in the record various orders that preceded the termination order. However, *Busbee* applies only to the failure to include relevant orders in the *record*, which is not an issue here; all relevant orders are included in Smith's record. The deficiencies that DHHS points to in the present case concern Smith's *addendum*. Therefore, *Busbee* is not on point.

Nevertheless, we agree with DHHS that Smith's addendum is lacking. Arkansas Supreme Court Rule 6-9(e)(2)(E) provides that an addendum shall include, among other things, "relevant pleadings, documents, or exhibits essential to an understanding of the case . . . ." From a record containing over 800 pages of orders, pleadings, exhibits, and testimony — much of which was relevant to the trial court's findings and essential to our understanding of the case — Smith has addended only the notice of appeal, the termination order, and the termination petition. However, Rule 6-9 allows an appellee to supplement the appellant's addendum if the appellee considers it defective or incomplete. Ark. Sup. Ct. R. 6-9(f)(2)(C). Supplemental addenda were filed in this case by DHHS and the attorney ad litem, and they include some of the relevant exhibits and orders. We therefore rely on those supplements. Additionally, we see nothing in Rule 6-9 that prohibits us, in the course of our de novo review, from going to the record to affirm. *See generally Mobley Law Firm v. Lisle Law Firm*, 353 Ark. 828, 120 S.W.3d 537 (2003). Accordingly, we decline DHHS's request to dismiss the appeal, and we turn to the arguments presented by Smith.

### Amendment To Petition

Smith argues that the trial court violated his due-process rights when it allowed DHHS to amend the termination petition on the day of the termination hearing. DHHS sought permission

to amend its petition to reflect that the children had been in DHHS custody for twelve months or longer, which is a component of two grounds for termination under our statute:

> That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent; and

> That the juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

Ark. Code Ann. §§ 9-27-341(b)(3)(B)(i)(*a*), (ii)(*a*) (Supp. 2005).

We find no reversible error. Under Ark. R. Civ. P. 15(a), with certain exceptions not applicable here, a party may amend his pleadings at any time without leave of the court, unless, upon motion of an opposing party, the court determines that prejudice would result or disposition of the cause would be unduly delayed. *See Trice v. Trice*, 91 Ark. App. 309, 210 S.W.3d 147 (2005). If prejudice or undue delay is demonstrated, the court may strike the amended pleading or grant a continuance. *See id.* The trial court has broad discretion in allowing or denying amendment of the pleadings. *Id.* Where neither a continuance is requested nor a demonstration of any prejudice resulting from an amendment is shown, the amendment should be allowed. *Turner v. Stewart*, 330 Ark. 134, 952 S.W.2d 156 (1997).

◼ Smith did not request a continuance to meet the substance of the amendment. Nor did he demonstrate prejudice. The amendment added a factual matter that all parties knew or should have known: that JS had been in DHHS custody for more than twelve months. Moreover, in terminating Smith's parental rights, the trial court cited a ground that does not depend on the child's being out of the parent's custody for twelve months — that there is little likelihood that services to the family will result in successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*) (Supp. 2005). Based on these factors, we affirm on this point.

## Sufficiency of the Evidence to Support Termination

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). Grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

The goal of our termination statute is to provide permanency in a child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2005). Parental rights may be terminated if clear and convincing evidence shows that it is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2005). Additionally, one or more statutory grounds must be shown by clear and convincing evidence. *Meriweather, supra.*

■ We cannot say that the trial court clearly erred in this case. In its adjudication order, the court directed Smith to obtain stable housing, employment, and income; to keep DHHS informed of his address, telephone numbers, and employment; to have random drug screens; and to undergo a drug-and-alcohol assessment. The court also established visitation with JS and referred Smith for a GED. Yet, the evidence shows that Smith persistently failed to comply with the court's order and failed to take advantage of the family services being offered. He was inconsistent in his visitation of JS. In fact, his visitation was eventually suspended and never reinstated because of his disobedience of court orders. He tested positive for drugs throughout the case, including on the date of the permanency-planning hearing,

and did not follow up on recommendations resulting from a drug-and-alcohol assessment. Further, he was not working or pursuing his GED. Additionally, he was generally unavailable to DHHS workers, and he failed to appear at the termination hearing. Considering these factors, along with Ms. Spencer's testimony that adoption of JS was "very possible," we do not believe that the trial court clearly erred in finding that termination of parental rights was in JS's best interest.

We also find no clear error in the trial court's determination that reunification would be unlikely even if services continued. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) (Supp. 2005) establishes a ground for termination where the parent is found by a court to have subjected any juvenile to "aggravated circumstances." The term "aggravated circumstances" includes the following definition:

> A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, *or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification.*

(Emphasis added.) This type of aggravated circumstance can occur where a parent is not following through with offers of assistance; is not completing basic goals of the case plan, such as obtaining appropriate jobs and housing; and there is a lack of significant progress on the parent's part. *See, e.g., Davis v. Ark. Dep't of Human Servs.*, 98 Ark. App. 275, 254 S.W.3d 762 (2007). This describes Smith's conduct in this case quite accurately.

Moreover, in our de novo review, we could hold alternatively that other grounds for termination were met. *See Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 82 S.W.3d 183 (2002). Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) provides as a ground for termination:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Smith's behavior in the months following the filing of the dependency-neglect petition matches up well with this statutory language. Despite DHHS's provision of reasonable services, he engaged in continuous drug use throughout the case and took no steps to remedy his problem; exhibited a lack of cooperation; was apathetic toward the outcome of the termination hearing; and was indifferent to complying with court orders.

In light of the foregoing, we cannot say that the trial court's termination of Smith's parental rights was clearly erroneous.

### Trial Court's Consideration of Evidence From Prior Hearings

Smith argues that, because the termination order "contains evidence not presented at the termination hearing," it violates Ark. Sup. Ct. R. 6-9. The relevant portion of that rule reads:

> The record for appeal shall be limited to the transcript of the hearing from which the order on appeal arose, any petitions, pleadings, and orders relevant to that hearing, and all exhibits entered into evidence at that hearing.

Ark. Sup. Ct. R. 6-9(c)(1).

The trial court's order does in fact refer to prior orders and evidence from earlier proceedings. However, we find no error. In *Osborne v. Arkansas Department of Human Services*, 98 Ark. App. 129, 252 S.W.3d 138 (2007), the appellant argued that the trial court erred in relying on evidence from prior hearings in a termination case. We disagreed and stated:

> The process through which a parent or parents travel when a child is removed from their home consists of a series of hearings — probable cause, adjudication, review, no reunification, disposition, and termination. All of these hearings build on one another, and the findings of previous hearings are elements of subsequent hearings.

*Id.* at 136, 252 S.W.3d at 143 (quoting *Neves da Rocha v. Ark. Dep't of Human Servs.*, 93 Ark. App. 386, 219 S.W.3d 660 (2005)).

■ We recognize that the termination order in *Osborne* was entered before the effective date of Rule 6-9, but we see no reason to depart from its holding. Rule 6-9 governs "appeals in

dependency-neglect cases." It contains provisions pertaining to appealable orders, notices of appeal, the record on appeal, the parties' petitions and responses, and other appellate forms and procedures. It does not state that it governs a trial court's manner of deciding dependency-neglect proceedings. In particular, we find nothing in the rule that dictates what evidence may be considered by a trial court in termination proceedings. We therefore reject Smith's argument.

## Conclusion

For the reasons stated, we affirm the trial court's termination of Smith's parental rights to JS.

Affirmed.

PITTMAN, C.J., and GLADWIN, J., agree.