2010 Ark. App. 452

**Tonya RODGERS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

No. CA 09–606.

Court of Appeals of Arkansas.

May 26, 2010.

Suzanne Ritter Lumpkin, Little Rock, AR, for appellant.

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, AR, Tabitha Baertels McNulty, Little Rock, AR, for appellee.

M. MICHAEL KINARD, Judge.

In this appeal, which is before us on the merits after being remanded to settle the record and for rebriefing,[1] appellant Tonya Rodgers challenges the sufficiency of the evidence to support the Craighead County Circuit Court's finding that the Department of Human Services had proven grounds for the termination of her parental rights to her son, C.R. We affirm.

On May 23, 2008, DHS received a report from an officer with the Jonesboro Police Department stating that they had arrested Rodgers for being under the influence of alcohol, drugs, or both, after she returned to a women's shelter where she and her son had been staying. Rodgers was so incapacitated that the arresting officers could not leave her son with her. C.R. was taken into care for having no caregiver available. On May 28, 2008, the court issued an order for emergency custody.

The court later found that probable cause existed and ordered that Rodgers complete certain specific objectives, including that she comply with the orders of the court; cooperate with DHS; obtain and maintain stable housing; obtain and maintain stable employment or provide documentation showing sufficient income to meet the needs of the family; resolve all outstanding legal issues; submit to a drug and alcohol assessment; remain drug free and submit to random drug screens;[2] maintain weekly contact with the case worker; and complete a psychological evaluation and follow all recommendations.

At the July 31, 2008 adjudication hearing, Rogers stipulated to a finding that C.R. was dependent-neglected due to inadequate supervision and parental unfitness as a result of her drug and alcohol abuse. The goal was set as reunification. In addition to the conditions contained in the probable-cause order, Rodgers was also ordered to sign a release so that DHS could obtain a copy of her previous psychological evaluation.

On November 6, 2008, Rodgers executed a "Consent to Termination of Parental Rights, Waiver of Notice, and Entry of Appearance" but she subsequently withdrew that consent on November 13, 2008.

On November 6, 2008, the court held a review hearing and found that the case was moving toward an appropriate permanency plan and continued the goal as reunification. The court found that Rodgers was noncompliant with court orders and

1. See *Rodgers v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 172, 2010 WL 546374 (rebriefing); *Rodgers v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 778, 2009 WL 3856191 (settlement of the record).

2. Any refusal to comply was to be considered a positive drug screen.

the case plan. The Craighead County Division of Children and Family Services was relieved of providing further transportation services to Rodgers, based on her abusive behavior while being transported and her statement that she had the financial resources to obtain transportation. The order also provided that Rodgers would not be considered as a placement for C.R. until she completed an inpatient drug rehabilitation program.

On November 26, 2008, DHS filed a motion to terminate reunification services to Rodgers, alleging that there was little likelihood that services to the family would result in successful reunification for Rodgers due to her noncompliance with the case plan and court orders. Also on November 26, 2008, DHS filed its petition to terminate Rodgers's parental rights. The petition asserted two grounds for termination, including that subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrated that return of the juvenile to the custody of Rodgers was contrary to the juvenile's health, safety, or welfare and that despite the offer of appropriate family services, Rodgers had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate Rodgers's circumstances which prevented return of C.R. to Rodgers's custody. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a). The ⌊4petition also asserted that Rodgers had subjected the juvenile to aggravated circumstances, in that there was little likelihood of successful reunification.

On February 17, 2009, the termination of parental rights hearing began but was continued because Rodgers was not present. The court allowed DHS to commence the hearing by offering its exhibits. When the case resumed on March 2, 2009, Rodgers was again not present and counsel again moved for a continuance. The motion was denied.

Valerie Duff, the DHS case worker assigned to the case, was the sole witness at the termination hearing. She testified as to the tasks that Rodgers was ordered to complete in order to regain custody of C.R. Duff also testified that, in her opinion, Rodgers had failed to comply with the orders of the court and the case plan in that she did not complete a psychological evaluation. Rodgers had also entered an inpatient treatment program but was discharged because she threatened to commit suicide and made threats against other patients. Rodgers was asked to leave a second facility because she was hostile and making threats. According to Duff, Rodgers did not submit to a drug and alcohol assessment, did not cooperate with the department, did not have stable housing, and was not employed. Rodgers was drawing SSI benefits. Duff said that the department's plan for C.R. was adoption and that his foster family was interested in adopting him. Duff stated that, in her opinion, C.R. would be harmed if he were returned to Rodgers and that termination was in C.R.'s best interest. Duff also said that Rodgers appeared indifferent about rectifying the situation that led to C.R.'s removal and gave as an example Rodgers's comments, after ⌊5a November 2008 hearing, saying that she would sign her rights away and that she did not need C.R. in her life because she could have more children later.

At the close of DHS's case and at the close of all of the evidence, Rodgers's counsel moved for a dismissal of the petition, arguing that there was insufficient evidence. The court denied the motions.

The court ruled from the bench and granted the petition to terminate Rodgers's parental rights. The court found that DHS had provided clear and convinc-

ing evidence that it was in C.R.'s best interest to have Rodgers's parental rights terminated. The court found that Rodgers was not compliant with the court's orders or the case plan. The court noted that it considered Rodgers's statement concerning her lack of desire to care for C.R. and the fact that she first consented to the termination of her parental rights, but then withdrew that consent. The court further found that DHS had proven the two grounds for termination stated in its petition. This appeal followed.

■ We review termination of parental rights cases de novo. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark.App. 247, 240 S.W.3d 626 (2006). The grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A heavy burden is placed on the party seeking termination. *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005).

■ The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). The court should consider factors such as the likelihood of adoption and the potential harm to the health and safety of a child if subjected to continuing contact with the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i), (ii) (Repl.2008). Parental rights will not be enforced to the detriment of the health and well-being of the child. *Jones, supra.*

■ We hold that the circuit court did not err in terminating Rodgers's parental rights based on the "other factors" ground found in Ark.Code Ann. § 9–27–341(b)(3)(B)(vii). That ground provides as follows:

That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(a) (Repl.2008). Our review of the evidence convinces us that this ground warrants termination of Rodgers's parental rights. The evidence also supports a finding that DHS offered appropriate services to Rodgers, but that she failed to take advantage of those services. Indeed, it was Rodgers's own actions that led to that failure. Rodgers failed to complete two in-patient substance abuse programs because she made threats to the patients and staff at those facilities. She was also verbally abusive to DHS workers providing her with transportation services, resulting in the termination of those services. Moreover, her indifference in remedying the problems so that C.R. could be returned to her custody was indicated by her statement that she could always have more children at a later time. We need not discuss Rodgers's arguments as to the other

ground for termination the circuit court found had been established because only one ground is needed. *Lee v. Ark. Dep't of Human Servs.,* 102 Ark.App. 337, 285 S.W.3d 277 (2008); *Hall v. Ark. Dep't of Human Servs.,* 101 Ark.App. 417, 278 S.W.3d 609 (2008).

■ The circuit court found that termination was in the best interest of the child. Here, there was undisputed testimony that C.R. was adoptable, supporting the trial court's finding. This indicated that DHS had a proper permanency plan for C.R. *See M.T. v. Ark. Dep't of Human Servs.,* 58 Ark.App. 302, 952 S.W.2d 177 (1997). Rodgers's indifference to having C.R. in her life and her failure to complete the rehabilitation programs all show potential harm to C.R. if he were returned to Rodgers's custody. *See Smith v. Ark. Dep't of Human Servs.,* 100 Ark.App. 74, 264 S.W.3d 559 (2007). Therefore, the circuit court's best-interest determination is not clearly erroneous.

|₈Affirmed.

BAKER and BROWN, JJ., agree.