2013 Ark.App. 299

**Angela PORTER, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 13–23.**

Court of Appeals of Arkansas.

May 1, 2013.

Leah Lanford, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, County Legal Operations, for appellee.

Chrestman Group, PLLC, by: Keith Chrestman, attorney ad litem for minor child.

WAYMOND M. BROWN, Judge.

Appellant Angela Porter appeals from an order of the Washington County Circuit Court terminating her parental rights to her son, J.S., born on February 8, 2012.[1] Appellant argues that the trial court erred in finding that termination of her parental rights was in J.S.'s best interests. We affirm.

The Arkansas Department of Human Services (DHS) received a report that appellant admitted to her nurses and doctors in December to using methamphetamine, while she was pregnant with J.S. Both appellant and J.S. tested negative for drugs at the time of J.S.'s birth. DHS exercised a seventy-two-hour hold on J.S. on March 6, 2012, after appellant tested positive for both methamphetamine and benzodiazepines. An order for emergency custody was entered on March 8, 2012. The court entered an order on March 12, 2012, finding that probable cause existed for J.S. to remain in the custody of DHS. Specifically, the court found that it was contrary to J.S.'s best interest to return him to appellant's custody due to appellant's "positive drug screen for methamphetamine, and Benzodiazepines, and because of [appellant's] lengthy history of meth use & DHS previous involvement with [appellant]." The court also noted that appellant had previously had her parental rights to five other children termi-nated in prior cases despite being offered numerous services by DHS.

J.S. was adjudicated dependent-neglected in an order entered on May 8, 2012, due to neglect and parental unfitness. The court ordered that appellant not be allowed visitation with J.S. because she tested positive for methamphetamine at her first visit with J.S. on April 4, 2012.[2] DHS filed a motion to terminate reunification services with appellant on May 8, 2012. The court entered an order for no reunification services on June 8, 2012, after finding that there was little likelihood that services to appellant would result in successful reunification with J.S. because of appellant's lengthy history with methamphetamine use, which resulted in her rights being terminated as to five of J.S.'s siblings; her drug use while pregnant with J.S.; and her continued use of drugs after J.S. was placed in foster care. The court changed the case goal to termination of appellant's parental rights in the permanency-planning order filed on June 8, 2012. DHS petitioned to terminate appellant's parental rights on July 11, 2012. In the petition, DHS alleged that Porter's parental rights as to J.S.'s siblings had been involuntarily terminated,[3] that appellant was found to have subjected J.S. to aggravated circumstances,[4] and that other issues arose subsequent to the filing of the original petition for dependency-neglect, which demonstrated that return of J.S. to Porter was contrary to J.S.'s health, safety, or

1. Although appellant's parental rights were terminated, the court continued the case goal of reunification for J.S.'s father, Carl Skaggs. Therefore, Skaggs is not a party in this appeal.

2. The court had previously ordered that appellant pass three surprise drug screens before being allowed visitation with J.S. When she met the court's requirement, she was al-lowed to visit him on April 4, 2012, but was subsequently drug screened because she was acting "odd" and "jittery."

3. Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(a)(4) (Supp.2011).

4. Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(a)(3)(B)(i).

welfare.[5]

At the termination hearing, counselor Kathleen Housley testified that she had been Porter's counselor on and off since 2003. She stated that she began seeing Porter again at the end of April 2012 and had continued to see her every other week. Housley testified that appellant told her that appellant had not use drugs for the entire eleven years, but had in fact had a four-to-five year period of sobriety during that time. Housley opined that Porter had matured over the past nine years due to trauma, loss, and grief that she had experienced; that appellant was more optimistic about her future this time, as proven by appellant obtaining her GED and being enrolled in college courses; that appellant had a greater chance of staying clean this time because she had completed a sixteen-week intensive program at Decision Point, she attended NA regularly, she was part of a group at Ozark Guidance Center, where she also had a psychiatrist, and that she was on medication; and that Porter was capable to parent J.S. or to help Skaggs parent J.S. However, Housley stated that there was always a risk for relapse with substance abuse; that one's past behavior could determine or predict one's future behavior; that the odds would be against a person to have a lifelong change when they have had a substance-abuse problem for eleven years; that appellant engaged in the same behavior that caused her to lose her other children; and that although she had provided appellant with intensive family services in 2003, appellant still relapsed. She also stated that she believed appellant was bipolar and had been diagnosed with borderline personality disorders (BPD). Housley testified that typical behaviors for BPD were intimacy issues and attachments, which Housley had seen with appellant over the years. However, Housley stated that appellant seemed more stable this time.

Angela Wood, the DHS family-service worker on this case, testified that appellant obtained individual counseling on her own volition after DHS was relieved of providing services; that there had not been a trial placement with appellant because she had just recently, in May 2012, been able to verify that she was trying to remain sober; that appellant continued to use methamphetamine after J.S. entered DHS custody and that his removal was not enough to make her stop using drugs; and that appellant's drug use led to the termination of her parental rights in four children in 2007, and the termination involving a fifth child in 2009. Wood stated that J.S. had been diagnosed as failure to thrive; that he has hypertonicity, a condition where the muscles in his body are extremely rigid; [6] that he has a gastrointestinal disorder; and that he has some sensory overstimulation issues that are being looked into.[7] She also said that J.S. attends the Elizabeth Richardson Center daily to assist with all of his delays. Wood testified that initially, appellant's actions would contribute to J.S.'s overstimulation issues, but she started using soothing techniques after she spoke with a specialist. Wood testified to the following without objection:

Angela Porter does not demonstrate an ability to protect J.S. Ms. Porter, especially in the psychological evaluation, she has reported a life marked by instability, chronic methamphetamine use. During

---

**5.** Ark.Code Ann. § 9–27–341(b)(3)(B)(vii).

**6.** When he first came into custody, he was unable to move his large major muscles, including his arms, trunk, and legs.

**7.** He seems to be highly sensitive to loud noises, startles easily, and screams for hours.

the last 11 years when she's been working with the Department, she has had some stability where she's been sober. Unfortunately, those periods of st—sober and stability come to a halt. Angela Porter does have a certain type of mental health disorder, as it says in her psychological evaluation, that can lead to a sudden deterioration of her mental health. And at that time, we have seen where Angela will start using methamphetamines again. My concern is that even though she has been sober for the last five months, that at any time she could start using again, or she could have a serious mental breakdown of sorts that would put J.S. in harm's way.

Wood opined that J.S. was adoptable and that he had demonstrated good progress in his therapies. Wood acknowledged that appellant had done everything she was ordered to do, including completing parenting classes, going to counseling, and taking assessments and evaluations.

Appellant testified that she was in complete compliance with all court orders. She acknowledged that she previously had her parental rights to five other children terminated; that she had been given every possible service that she could get on two different occasions and that she still relapsed; and that she stopped using drugs on March 4, 2012. However, she testified that this time was different because she was in a stable relationship and had the benefit of Skaggs's family, and that she was currently taking medication for her BPD. She asked that her parental rights not be terminated based on her full compliance and the "new Angela that has come through this."

Carl Skaggs testified that appellant is a good mom and asked the court not to terminate her parental rights to J.S. He stated that he wished to marry appellant, but that he would put her out if she re-lapsed. Skaggs told the court that he did not find out about appellant losing her parental rights to her other children until about the time she went to the hospital to ask for help after using methamphetamine.

The court granted DHS's petition, stating in pertinent part:

So today, we look at, under the statute for termination of parental rights, can I return little J.S. to mom today? No, I cannot. Even if you go with the fact that mom's been clean and sober and she's been passing all her drug screens except for one since J.S. came into care, and I don't recall the date of that drug screen, but in any event, mom was using drugs on March the 6th. She was using meth. And you just don't say, okay, well, you used meth March the 6th and now you've passed all your drug screens but one and that's all we're gonna look at. You have to look at 11 years of addiction and 11 years of meth use, five other children who've had their mother's rights terminated for the same reasons. We have Ms. Housley, who's been giving services to Miss Angela since 2003. It's not safe for mom—for the baby to be placed with mom today. Now, is it safe for the baby to be placed with Mr. Skaggs today? No, because he and Miss Angela are a couple. The potential harm if we place a baby who has these special needs, who most likely has those as a result of meth exposure, that could mean he could just die if mom starts using again and does something crazy. That's not in his best interest. He's adoptable.

I find that the Department has met its burden of proof with respect to the Petition to Terminate Parental Rights, that he's been adjudicated dependent-neglected, and despite all the work that's gone on over the past 11 years with DHS involvement of the family, that the

Department has proven the ground that mother had her rights previously terminated. And that's a ground for termination under 9–27–341, has had his or her parental rights involuntarily terminated as to a sibling of the child, and in this case, five other children, and they didn't all come into foster care at the same time.... [T]he reason they were terminated was for the same reasons that little J.S. came into care. I find that it's in the best interest of J.S. that his mother's rights to J.S. be terminated. And I hereby terminate those rights.

The termination order was filed on October 17, 2012. Porter filed a timely notice of appeal on October 30, 2012.

We review termination of parental rights cases de novo.[8] Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[9] Grounds for termination of parental rights must be proved by clear and convincing evidence.[10] Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[11] When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[12] We give due regard to the opportunity of the trial court to judge the credibility of the witnesses.[13] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[14]

In order to terminate parental rights, it must also be proved that termination is in the children's best interest.[15] This includes consideration of the likelihood that the child will be adopted and the potential harm caused by returning custody of the child to the parent.[16] In considering the potential harm caused by returning the child to the parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm.[17] Potential harm must be viewed in a forward-looking manner and in broad terms.[18] Additionally, the risk for potential harm is but a factor for the court to consider in its analysis.[19]

Porter does not challenge the statutory grounds for termination, nor does she contest the court's permanency plan for J.S. Instead, she argues that it was error for the trial court to terminate her

8. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

9. *Id.*

10. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

11. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

12. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

13. *Id.*

14. *Id.*

15. *Smith v. Ark. Dep't of Health & Human Servs.*, 100 Ark.App. 74, 264 S.W.3d 559 (2007).

16. Ark.Code Ann. § 9–27–341(b)(3)(A).

17. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290.

18. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90, 2013 WL 546940.

19. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark.App. 255, 148 S.W.3d 780 (2004).

parental rights because it was not in J.S.'s best interest to do so. More specifically, Porter argues that the court's finding that potential harm would befall J.S.'s health and safety if returned to her was clearly erroneous. Porter cites *Conn v. Ark. Dep't of Human Servs.,*[20] to support her position that the court's determination should be reversed. In *Conn,* the appellate court reversed a decision to terminate parental rights where there was no clear and convincing evidence that termination was in the child's best interest. DHS submitted evidence that Conn's parental rights had been terminated to the child in question's sibling. Because DHS put on no other evidence whatsoever, this court reversed, holding that DHS must show by clear and convincing evidence the grounds for termination and show by clear and convincing evidence that the termination is in the child's best interest.

In this case, there was evidence presented by DHS on the issue of whether it would be in J.S.'s best interest for Porter's parental rights be terminated. Evidence showed that Porter's rights to five of J.S.'s siblings had been terminated due to Porter's methamphetamine use. Porter had undergone intensive therapy and was provided with numerous services on two separate occasions before having her parental rights to these children terminated. Despite losing five children due to her meth use, she still used the drug while pregnant with J.S., after having him, and even after he was put in DHS custody. Evidence showed that she experienced long periods of sobriety in the past, before again returning to her drug of choice. Although Porter had been sober for five months at the time of the termination hearing, her drug rehabilitation was still a work in progress. The court properly considered the potential harm to J.S. in light of this

evidence. Thus, we cannot say that it erred in its determination that it would be in J.S.'s best interest to terminate Porter's parental rights.

Affirmed.

HARRISON and GRUBER, JJ., agree.

20.   79 Ark.App. 195, 85 S.W.3d 558 (2002).