Kurt BELUE  *v.*  ARKANSAS DEPARTMENT of
HUMAN SERVICES

CA 08-883                                                289 S.W.3d 500

Court of Appeals of Arkansas
Opinion delivered December 17, 2008

*Melissa Dorn Bratton*, Arkansas Public Defender Comm'n, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Jo Ellen Carson*, attorney ad litem for the minor children.

JOHN MAUZY PITTMAN, Chief Judge. Kurt Belue appeals from an order terminating his parental rights in four children: K.B. (born January 29, 2002), S.B. (born May 21, 2003), T.B. (born January 7, 2005), and H.B. (born March 5, 2006). He argues that there was insufficient evidence to support the termination order. We affirm.[1]

In March 2006, the Arkansas Department of Human Services (DHS) began providing the Belue family with caseworker services, homemaker services, and referrals for domestic violence and anger management. According to a DHS affidavit, a visit to the home in August 2006 revealed a serious roach infestation and foul odor. The children were found with "dirt caked upon the bottom of their feet, smelling as if not bathed recently, rashes from being unwashed, caked on feces in the youngest['s] diapers, and dead roaches in one child's hair." The DHS investigator also found that Kurt Belue was unemployed and that, although he professed the inability to afford a steam cleaner as DHS had requested, there was a large, flat-screen television on his living room wall. DHS filed a petition for emergency custody of the children, which the court granted on August 7, 2006. The court subsequently found probable cause for the children's removal and adjudicated them dependent-neglected, based on environmental neglect and medical neglect. The medical-neglect finding stemmed from three of the children being diagnosed with failure to thrive.

The adjudication order established a goal of reunification and required Kurt Belue to complete parenting classes; submit to a psychological examination and follow recommendations; submit to a drug-and-alcohol assessment and follow recommendations; maintain clean housing with working appliances; obtain stable

---

[1] The same order terminated the parental rights of the children's mother, Susie Belue. Mrs. Belue is not a party to this appeal.

transportation with valid tags, insurance, and driver's license; submit to random drug screens; and visit the children regularly. These requirements were later expanded to include attending counseling as recommended; resolving pending criminal charges; maintaining stable, appropriate, and smoke-free housing; maintaining employment; taking medications as prescribed; and cooperating with CASA and DHS. Review orders entered by the court in February and July 2007 found Belue in partial compliance with court orders and the DHS case plan.

On November 15, 2007, the court entered a permanency-planning order that changed the goal of the case to termination of parental rights and adoption. The order stated that Belue had failed to maintain appropriate housing, employment, and transportation; exhibited anger problems despite completing an anger-management class; failed to stop smoking; and had "current criminal charges," which the court did not specify. DHS filed a petition to terminate parental rights on December 6, 2007.

At the termination hearing in April 2008, Belue testified that DHS never offered to assist him in any way. He said he had complied with the case plan and court orders by acquiring transportation, attending counseling, and visiting the children. He was living in a one-bedroom apartment and saw no need to get a larger apartment while the children were out of his custody. He said he would be able to move into another place if the children were returned to him. Belue also testified that he had been unemployed since October 2007, though he had been filling out job applications. He had also filed a Social Security disability claim stemming from injuries he received in a May 2005 car accident. The claim was denied, but he continued to pursue the case, and he and his attorney hoped that he would begin receiving benefits within a year. In the meantime, he supported himself with food stamps and a $17,000 settlement, presumably a tort settlement pertaining to the car accident. At the hearing, Belue was unsure of the amount remaining from the settlement. However, the proof showed that he had lived on the funds for six months and had purchased approximately $1300 worth of furniture and a $2000 used car. By Belue's own admission, he could not manage his financial affairs, and his mother controlled his money and paid his bills for him.

Belue further testified that he was "gaining some ground" on his anger issues. He denied signing, or said he was "tricked" into signing a DHS case plan prepared in 2006, which provided that Belue needed anger-management classes but which contained

the following notation of a signatory's disagreement with the plan: "b/c I don't have problems with anger." Belue also testified at one point during the hearing that he did not believe he had anger issues.

Belue acknowledged that he still smoked outside his home. He further stated that he did not pay child support on his other five children, though his testimony was conflicting as to whether he owed support. He also said he was aware that his wife had abused the children "ever since [they] were born." Yet, as he explained, he did not call the authorities but "tried to get the police called on me" by standing on the front porch and yelling at Mrs. Belue to "get the hell out of the house."

Robin Sanders testified that she had been Belue's counselor since January 16, 2008, although Belue had been in counseling for "quite some time." She said Belue attended all of his appointments with her but had only made "minimal progress." Sanders testified that the first session in which she noticed any progress was on March 18, about three weeks before the termination hearing.

Cindy Farrell of Court Appointed Special Advocates (CASA) testified that Belue told her that he would be willing to "take a couple of the children" or "just whatever he could get." She said that he was apparently referring to the fact that he knew he did not have a lot of room in his apartment.

Glenda Evans of CASA testified that she recommended termination of parental rights based on the lack of progress over the history of the case. She said that Belue could not count on receiving disability benefits and that CASA's investigation turned up no evidence that he could not work. Evans observed that Belue would limp in the courtroom but not at other locations where she had seen him. She also said she had seen Belue get angry to the point of being "somewhat out of control." She expressed concern about his anger "with regard to putting the children back in his care." Evans additionally stated that Belue still owed support on at least one of his other children. According to her, Belue's contacts with her consisted mainly of his complaining about DHS rather than discussing the children.

DHS family service worker Tiffany May testified that Belue had completed parenting classes, but she was not sure how much he had learned from them. She said that he often spoke negatively about the children's mother in front of them, despite being told it was inappropriate. She further testified that Belue still had to be

prompted and monitored during his visits with the children. May additionally expressed concern that Belue had learned little from anger management classes, noting that he had difficulty controlling his anger while testifying at the hearing. She recited the numerous services that DHS had offered in the case, including transportation, homemaker services, housing, clothing, and counseling referrals, and one-on-one parenting instruction. According to May, the children were readily adoptable.

After the hearing, the court terminated Belue's parental rights as to all four children. The court found that termination was in the children's best interest, considering the likelihood of adoption and the potential harm in returning the children to Belue. *See* Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii) (Repl. 2008). The termination order specifically mentioned, among other factors, Belue's lack of stability and failure to make substantial progress in the case over twenty months; his failure to maintain stable and appropriate housing and employment; his failure to benefit from anger-management classes; his failure to stop smoking; and his inability to manage his own finances. The court cited as a ground for termination that the children had been out of Belue's custody for more than twelve months and, despite meaningful efforts by DHS to rehabilitate him and correct the conditions that caused removal, those conditions were not remedied. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Repl. 2008). Belue filed a timely notice of appeal and argues that there was insufficient evidence to terminate his parental rights.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Smith v. Arkansas Department of Human Services*, 100 Ark. App. 74, 264 S.W.3d 559 (2007). However, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* An order terminating parental rights must be based upon a finding by clear and convincing evidence that (1) termination is in the best interest of the children, including consideration of the likelihood of adoption and the potential harm caused by returning the children to the parent, and (2) at least one statutory ground for termination exists. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2008). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Meriweather v. Arkansas Department of Human Services*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). When the burden of proving a disputed fact is by clear and convincing

evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id.* A finding is ·clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

■ We are not firmly convinced that the trial court was mistaken in terminating Belue's parental rights. At the time of the termination hearing, the children had been out of the home for twenty months. Belue was living in a one-bedroom apartment and had not secured stable employment. He had also been turned down for Social Security disability benefits, which he could only hope to receive within a year if his appeal proved successful. The intent of our termination statutes is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3) (Repl. 2008).

■■ There was also evidence that Belue's disability claim was of questionable legitimacy. Glenda Evans testified that CASA's investigation turned up no evidence that Belue could not work, and she said he tended to limp in court but not at other times. Additionally, Belue's money-management skills were so lacking that he was unsure of the amount he had left from his car-accident settlement, and he relied on his mother to oversee his routine financial tasks.

The proof showed as well that Belue was observed by one witness to be angry to the point of losing control, and that he continued to have trouble controlling his anger, even on the witness stand. Belue's counselor said he had made only minimal progress in counseling,· which is hardly surprising, given that he denied on more than one occasion having anger-management issues. These factors, along with Belue's inability to properly interact with the children during visits, despite being prompted and instructed; his failure to support another child; and his testimony that DHS had done nothing to help him, even though it had provided numerous services, evidence a potential harm in returning the children to Belue and an incapacity or indifference on his part to remedying the circumstances that prevent the children

from being returned to him. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*) (Repl. 2008).[2] Moreover, Belue's compliance with certain aspects of the case plan does not warrant reversal of the termination order. What matters is whether his compliance made him capable of caring for his children. *See Wright v. Arkansas Department of Human Services*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). We cannot say that the circuit court clearly erred in ruling that it did not.

The dissent states that this case bears a great similarity to *Strickland v. Arkansas Department of Human Services*, 103 Ark. App. 193, 287 S.W.3d 633 (2008), but *Strickland* is clearly distinguishable. There, this court reversed a termination order that rested on only one potentially supportable ground, which was Ms. Strickland's inability to obtain proper housing, despite her continuous attempts. She eventually acquired a one-bedroom apartment, as did Mr. Belue, but she had two children to his four. More importantly, Ms. Strickland's ability to financially support her children did not depend on the mere possibility of obtaining an income source a year or more in the future. At the time of her termination hearing, she had already established her entitlement to disability benefits and was regularly receiving them. There was also no evidence that Ms. Strickland suffered from anger-management issues.

Affirmed.

GLADWIN, GRIFFEN, and VAUGHT, JJ., agree.

HART and HUNT, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. The circuit court terminated the parental rights of appellant, Kurt Belue, after finding that he failed to comply with the case plan. Specifically, the court found that he failed to maintain stable and appropriate housing, failed to maintain stable employment, failed to maintain stable and safe transportation, failed to benefit from anger-management classes, failed to quit smoking, failed to make progress in his counseling sessions, and admitted that he is not capable of managing his own finances. The court's findings on each were clearly

---

[2] Although the circuit court cited a separate ground for termination, in our de novo review, we may hold alternatively that other grounds for termination were met. *Smith v. Arkansas Department of Human Services, supra.*

erroneous. In fact, the evidence presented was similar to the evidence presented in *Strickland v. Arkansas Department of Human Services*, 103 Ark. App. 193, 287 S.W.3d 633 (2008),where we reversed a circuit court's termination order. Given the similarities, we are obliged to reverse here as well, and thus I respectfully dissent.

*Stable and appropriate housing.* Belue had a one-bedroom apartment, which he planned to upgrade when his four children were returned to him. Belue was similarly situated to the mother in *Strickland.* There, the mother also lived in a one-bedroom apartment, which she planned to upgrade to a three-bedroom apartment when her two children were returned to her.

*Stable employment.* Belue testified that he had been disabled in a 2005 car accident and was pursuing a Social Security disability claim that he and his attorney hoped to resolve within a year. In the meantime, he was living on food stamps and the proceeds from a car-accident settlement, and DHS did not put on any evidence suggesting that he could not provide for his children by relying on these resources. In *Strickland,* the mother could similarly support herself and her children on her disability income of $623 a month and food stamps. The majority challenges the legitimacy of Belue's disability claim by citing testimony from a case worker that Belue limped sometimes and at other times did not. His injury, however, was a brain injury, so the testimony regarding his limping is of no evidentiary value.

*Stable and safe transportation.* Belue acquired a car in the months before the termination hearing. In *Strickland,* the mother had a transportation system in place, although, unlike the father in this case, she did not even own a car. By owning a car, Belue was better situated than the mother in *Strickland.*

*Anger management.* The court also relied on Belue's supposed lack of benefit from anger-management classes. Belue, however, had only been seeing the counselor who testified for a little more than two months, he had made progress regarding his anger issues after just two months, and there was no proof that his anger had harmed his children. Similarly, in *Strickland,* though the mother suffered from limited cognitive abilities and depression, there was no evidence that it adversely affected her parenting skills.

*Smoking.* The circuit court also cited the father's failure to stop smoking as a reason for termination, but the court did not order the father to stop smoking. He was ordered to maintain smoke-free housing, and he testified that he smoked outside.

*Counseling.* Belue attended counseling, completed parenting classes, and visited his children regularly. In *Strickland,* the mother also had completed parenting classes and visited her children. While the majority notes that Belue had difficulty interacting with the children during visits, the case worker testified that this had improved in the last two months. The majority also notes that Belue complained at the hearing that DHS had not done enough to help him. Surely this does not support termination.

*Managing finances.* The court pointed to Belue's inability to manage his finances. But Belue said that he relied on a support system, his mother, to manage his money, which I think shows an intelligent use of his resources. While the majority also notes that he did not provide child-support to another child, Belue testified that he no longer owed any child support, and there is no evidence in the record to controvert this.

Given the similarities between this case and *Strickland,* we should reverse.

HUNT, J., joins.