

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–15–169

| | |
|---|---|
| EMILY SMITHEE<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** SEPTEMBER 23, 2015<br><br>APPEAL FROM THE CLAY COUNTY CIRCUIT COURT [NO. WJV-2012-17-13]<br><br>HONORABLE CINDY THYER, JUDGE<br><br>AFFIRMED |

**DAVID M. GLOVER, Judge**

Emily Smithee's parental rights to her son, E.S., born on November 27, 2013, were terminated by the Clay County Circuit Court.[1]  Smithee now appeals the termination.  We affirm the trial court's decision.

An order terminating parental rights must be based upon clear and convincing evidence, *Camarillo-Cox v. Arkansas Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005), and the trial court's findings will not be reversed unless they are clearly erroneous—when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.  *Strickland v. Arkansas Dep't of Human Servs.*, 103 Ark. App. 193, 287 S.W.3d 633 (2008).  The appellate courts review termination orders de novo.  *Samuels v. Arkansas Dep't of Human Servs.*, 2014

---

[1]Terrence Smithee, who is the legal father of E.S. but not his biological father, entered a consent to the termination of his parental rights; he is not a party to this appeal.

Ark. App 527, 443 S.W.3d 599.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Belue v. Arkansas Dep't of Human Servs.*, 104 Ark. App. 139, 289 S.W.3d 500 (2008). In order to terminate parental rights, the trial court must determine by clear and convincing evidence that such termination is in the child's best interest, including consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2013). One of the statutory grounds for termination, found in Ark. Code Ann. § 9-27-341(b)(3)(B), must also be proved by clear and convincing evidence.

Smithee's parental rights were terminated on two bases—Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*)(*4*) (the parent is found by a court of competent jurisdiction to have had her parental rights involuntarily terminated as to a sibling of the child) and section 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*) (the parent is found by a court of competent jurisdiction to have subjected any juvenile to aggravated circumstances).

Smithee does not challenge the finding that termination of her parental rights was in E.S.'s best interest, and she does not directly challenge the sufficiency of the two grounds on which the trial court terminated her parental rights. Rather, she makes two arguments: (1) the involuntary termination of her parental rights to another child cannot be a ground for terminating her parental rights to E.S. because the involuntary termination occurred prior to E.S.'s birth, and therefore, that child and E.S. cannot be considered siblings; and (2) when the

Department of Human Services (DHS) does not amend its petition to conform to the evidence, it cannot rely on events that occurred between the petition and the hearing to establish a ground not alleged in its petition.

Smithee has a long history with DHS. In 2012, Smithee (then Humphrey), voluntarily relinquished her parental rights to her son, H.H., born on January 23, 2008, with spina bifida, and her daughter, A.H., born on May 25, 2011. Environmental issues within the home, as well as medical-neglect issues arising with H.H., necessitated the beginning of that case, and those issues continued until Smithee voluntarily relinquished her rights to the children. Smithee had another son, J.S., on August 1, 2012, who was removed from her custody in October 2012 due to her refusal to follow medical instructions for him and her lack of compliance with mental-health directives for herself. In the adjudication order filed in February 2013, the trial court found that Smithee had subjected J.S. to aggravated circumstances and granted DHS's motion to terminate reunification services on the basis that there was little likelihood that services would result in successful reunification. Smithee's parental rights to J.S. were involuntarily terminated in an order filed in April 2013.

E.S. was born prematurely with medical issues; DHS was notified by hotline that Smithee was not following physician's instructions while E.S. was still hospitalized and that it would be dangerous for E.S. to be released to Smithee's care, given her history. An emergency order was issued on January 10, 2014; a probable-cause order was filed on January 17, 2014. E.S. was adjudicated dependent-neglected on April 22, 2014. In a review order filed on June 25, 2014, the trial court found that, while the goal of the case remained

reunification, Smithee was only partially compliant with the case plan; the order also set a hearing on DHS's motion for no-reunification services for August 29, 2014. DHS filed its termination petition on July 11, 2014; an order granting DHS's motion for no-reunification services was filed on October 7, 2014. The order terminating Smithee's parental rights was filed on December 17, 2014.

*Prior Involuntary Termination of Sibling*

DHS placed into evidence a certified copy of the April 12, 2013 order involuntarily terminating the Smithees' parental rights to J.S., who was born on August 1, 2012, based on the findings that (1) other factors arose after J.S. had been adjudicated dependent-neglected that demonstrated that return of the juvenile was contrary to his health, welfare, and safety and that despite the offer of appropriate family services the parent manifested the incapacity or indifference to remedy the subsequent issues; and (2) the Smithees had subjected J.S. to aggravated circumstances because a court of competent jurisdiction had found that there was little likelihood that services to the Smithees would result in successful reunification. Smithee now argues on appeal that E.S. was not a sibling of J.S. because the Smithees' parental rights to J.S. had been terminated seven months before E.S. was born and, in accordance with Arkansas Code Annotated section 9–27–341(c)(1), "[a]n order terminating the relationship between parent and juvenile divests the parent and juvenile of all legal rights, powers, and obligations with respect to each other."

Smithee's argument was not preserved for appeal. Where there is no indication that the issues in question were raised below, they will not be considered for the first time on

appeal. *Miller v. Arkansas Office of Child Support Enforcement*, 2015 Ark. App. 188, 458 S.W.3d 733. For a circuit court to have committed reversible error, timely and accurate objections must have been made so that the circuit court was given the opportunity to correct the error. *Id.* It is the duty of the party seeking the relief to obtain a ruling from the trial court. *Id.* When a party seeking relief fails to obtain a ruling on the specific issue, the appellate court is precluded from reviewing the issue on appeal. *Id.* Although Smithee attempts in her reply brief to couch this argument as one of sufficiency, and contends that it was therefore unnecessary to challenge the sufficiency of the evidence to preserve it for appeal, it is not. DHS presented evidence of the involuntary termination of Smithee's parental rights to J.S. at the termination hearing for E.S. Smithee never presented this sibling argument to the trial court, and she is precluded from raising it now.

*Aggravated Circumstances*

Smithee's next argument is that the circuit court relied on a statutory ground that was not alleged in the petition. In the termination petition, DHS alleged that, under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*), Smithee had subjected E.S. to aggravated circumstances. "Aggravated circumstances" is defined in pertinent part to mean that "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*). Specifically, DHS alleged information regarding the involuntary termination of Smithee's parental rights to J.S. Additionally, DHS alleged:

> There is little likelihood of successful reunification. As noted above, Emily Smithee continues to have the same problems that caused removal and voluntary termination

5

of her two prior children, and the removal and involuntary termination of [J.S.]. During the pendency of this case, she has continued to show issues with judgment, issues that cause concern over her capability of caring for a child possibly with special medical needs, and continued environmental issues.

The circuit court held a hearing on August 29, 2014, on DHS's motion for no reunification of services, and an order granting the motion was entered on October 7, 2014.

Smithee now argues on appeal that the petition did not allege that a judge had determined that family services were not likely to result in reunification but instead alleged "there is little likelihood of successful reunification" and failed to mention family services. Smithee further argues that at the time DHS filed its termination petition on July 11, 2014, no judge had determined that services were not likely to result in successful reunification. She therefore concludes that the circuit court relied on a statutory ground that was not alleged in the petition to terminate her parental rights. She is incorrect.

The "aggravated circumstances" statutory ground for termination of parental rights provides that "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(B)(*i*). In *Jackson v. Arkansas Department of Human Services*, 2013 Ark. App. 411, at 6, 429 S.W.3d 276, 279–80, our court held;

> Our supreme court has extended many of the same Fourteenth Amendment due-process safeguards to proceedings involving the termination of parental rights as have been found to be constitutionally mandated in criminal trials. *Id.*; *see also Clemmerson v. Ark. Dep't of Human Servs.*, 102 Ark. App. 1, 4, 279 S.W.3d 484, 487 (2008) (citing *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005)). Due process requires, at a minimum, notice reasonably calculated to afford a natural parent the opportunity to be heard prior to terminating his or her parental rights. *Kight v. Ark. Dep't of Human Servs.*, 94 Ark. App. 400, 409, 231 S.W.3d 103, 109 (2006).

Smithee was given notice reasonably calculated to inform her as to what reasons DHS was alleging to terminate her parental rights on this ground. DHS specifically listed the statutory provision as to this ground, and it provided the information it would rely on to prove this ground. While it is true that there had not been a finding by a judge at the time the termination petition was filed that there was little likelihood that services would result in successful reunification of the family, there is no requirement that such a finding be made prior to filing the petition to terminate parental rights—only that a determination has been *or is made* by a judge that there is little likelihood that services to the family would result in successful reunification. That finding was made in a hearing held in August 2014 in which DHS was relieved of providing further reunification services. This ground was properly pled in DHS's petition to terminate parental rights, and the trial court correctly relied on such in terminating Smithee's parental rights.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Mischa K. Martin*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.