Cite as 2025 Ark. App. 82

# ARKANSAS COURT OF APPEALS
DIVISION
No. CV-24-629

| | |
|---|---|
| JESSICA ANN TIBADO<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered February 12, 2025<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORTH SMITH DISTRICT<br><br>[NO. 66FJV-22-235]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Appellant Jessica Ann Tibado appeals the Sebastian County Circuit Court's order terminating her parental rights. She argues two points on appeal: that the circuit court erred in finding statutory grounds to support termination and that it erred in finding termination was in the children's best interest. We disagree and affirm the circuit court's decision to terminate parental rights.

This court has recognized that "[t]ermination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Smith v. Ark. Dep't of Hum. Servs.*, 100 Ark. App. 74, 264 S.W.3d 559 (2007)." *Belue v. Ark. Dep't of Hum. Servs.* 104 Ark. App. 139, 144, 289 S.W.3d 500, 504 (2008). However, we will not enforce parental rights to the detriment

of the child. *Id.* Cognizant of the gravity of cases in which parental rights are at stake, we review the background of this case.

The Arkansas Department of Human Services (the Department) exercised an emergency hold over three of Jessica's four children on May 30, 2022, after a Fort Smith Police Department officer notified the Department that he had arrested Jessica on drug charges at approximately 3:00 a.m.[1] MC1 (age five), MC2 (age four), and MC3 (age three) were in the car with Jessica and two other adults when the officer stopped them and found drugs in the car. Only MC3 was in a car seat. Jessica had what appeared to be track marks on her right arm. She also had bruises on her arm that appeared to be from someone grabbing her. Jessica told the officer that she recently refused to have sex with the person who was driving the car, and he had grabbed her. Jessica tested positive for amphetamine, methamphetamine, and THC. A syringe found in the car appeared to contain heroin and methamphetamine. A baggie found in the front seat contained a crystal-like substance.

The circuit court granted the Department's petition for emergency custody on June 2, 2022. In the order granting emergency custody, the court noted that the family had a prior history with the Department, including a recently closed case.[2]

---

[1]Jessica's oldest child, MC4, was almost fifteen years old at the time and was in a juvenile detention facility due to his status as a runaway. The children's father is deceased.

[2]The Department had taken custody of Jessica's children in 2020. In November 2021, Jessica's husband, the children's father, died. Jessica had regained custody of her children in December 2021.

The court held a probable-cause hearing on June 9, 2022, at which time the parties stipulated that probable cause existed for the emergency-custody order to remain in place. Despite being in an inpatient substance-abuse treatment facility, Jessica appeared at the hearing.

The court held an adjudication hearing on June 14, 2022, and entered its order on July 26, 2022. Again, it accepted the parties' stipulations. It found the children dependent-neglected on the basis of neglect due to Jessica's failure to properly supervise the children and parental unfitness due to Jessica's drug abuse. It ordered Jessica to (1) obtain a driver's license; (2)obtain and maintain appropriate housing, employment, income and transportation; (3) complete parenting classes; (4) undergo a psychological evaluation and complete any recommended treatment; (5) stay clean and sober; (6) submit to drug-and-alcohol assessment and complete any treatment recommended; and (7) submit to random, observed drug screens, hair follicle tests, and alcohol swabs. The court separately ordered hair follicle testing. The Department was ordered, in part, to provide family services, including both family and individual counseling; clothing, medical, dental, and childcare services; and transitional youth and vocational services to MC4. The goal of the case was reunification.

After the review hearing on December 8, 2022, the court found that the Department had complied with the plan and the court orders—it had made reasonable efforts to provide family services and had worked on finalizing a permanency plan for the children. However, the court found that Jessica had not made the necessary progress. She lost contact with her

3

caseworker, lacked stable housing, and had no proof of income. While Jessica had completed an inpatient stay at a drug-and-alcohol rehabilitation facility, she had not completed outpatient treatment. Jessica had a negative drug screen, but she had refused at least one drug screen. She had completed a parenting class. The court ordered Jessica to complete outpatient drug treatment, undergo a drug test that day, undergo weekly drug screens, and undergo ninety-day hair follicle tests. The court ordered the Department to assist Jessica in creating a budget. The court continued the goal of reunification.

The circuit court held the permanency-planning hearing on May 11, 2023, and continued the goal of reunification. While the court found that the children should remain in the custody of the Department, it noted that the children had been on a trial placement with Jessica since April 10, 2023. The Department had inspected the home and found the conditions to be appropriate for the children. The court found that Jessica had participated in the required classes and services and had stable housing, income, and transportation. In short, she was in compliance with the plan, and the children were to remain in the trial placement with her. The Department was managing survivor benefits being held in trust for the children. The court ordered the Department to use the funds for Jessica's necessary expenditures and to use the remainder to help her buy a car. It also ordered the Department to determine how the trust funds could be used and to provide an accounting to Jessica's attorney and the attorney ad litem. Additionally, the Department was ordered to transfer the survivor-benefits funds it received to Jessica. The court found the Department compliant with the plan.

4

A review hearing was held on August 3, 2023. The children were still in trial placement with Jessica, but Jessica no longer had an apartment so they had been staying in motels. However, she testified that she had made arrangements to rent another apartment and expected to move in on August 10, 2023. Jessica admitted that she was struggling to manage MC4, who was now sixteen years old. He was living in a motel with his girlfriend and was on probation. The court ordered Jessica to determine the status of MC4's probation and ordered that MC4 move back in with his mother and attend counseling. The court ordered the Department to provide an accounting of the survivor-benefits fund within forty-eight hours and to use the money to help the family move toward stabilization as soon as possible. The court held that a Youth Villages employee should be in Jessica's home on a regular basis to monitor the circumstances. The court ordered Jessica to make herself available to the Department at all times for drug screening, home inspections, and other matters. The court was not pleased with the Department, stating, "The Court does not withhold a finding of reasonable efforts, but does feel that the Department has not followed its orders and assisted the family in as diligent a manner as it could have." The court noted that Jessica had not obtained and maintained stable housing, income, and employment. She had obtained transportation, but her car was not in working order at the time of the hearing. Jessica was receiving approximately $1,744 a month in death benefits related to the children's deceased father, and she had only worked a limited amount since the last review hearing. Jessica had attended parenting classes. The court found that the Department had complied

5

with the case plan and made reasonable efforts to provide services to the family. Reunification remained the primary goal.

Following a review hearing held on September 21, 2023, the circuit court entered an order continuing a goal of reunification but set a concurrent goal of adoption following termination of parental rights. The court noted that the trial home placement had ended August 24, 2023, because Jessica had not moved into an apartment as she had testified she planned to do. The Department had received a call at 10:30 p.m. on August 17, 2023, informing it that MC1, MC2, and MC3 were running around a hotel unsupervised. When Jessica was informed, she refused to get her children, instead leaving them outside. Jessica did not know where MC4 was and had not known for some time, so he had been placed on runaway status. Jessica did not have stable housing or income. Her vehicle was in need of repair and undriveable. The Department had referred Jessica to counseling, but she had not attended any sessions. The children had begun a new school year but had missed four of the first eight days and were significantly late on the four days they did attend. When the Department ended the trial home placement, it placed MC1 and MC2 separately in acute treatment facilities.

The court ordered referrals for grief counseling for MC4 and Jessica. It ordered the Department to provide an accounting of the survivor benefits to both Jessica's attorney and the attorney ad litem and that the Department use any available funds to assist Jessica with housing. The court again ordered drug testing and that, should Jessica have a positive hair follicle test, she be required to undergo drug-and-alcohol assessment and complete the

6

recommended treatment. The court found the Department to be in compliance with the plan and that it had made reasonable efforts to provide the family services.

The case went before the circuit court again on December 7, 2023, for further review and disposition. The Department provided a copy of the trust accounting the court previously had ordered and a copy of a text message in which Jessica acknowledged receipt of the Social Security benefits paid for the children's benefit. The court found that Jessica had a hair follicle test that was positive for amphetamines and methamphetamine; had two negative drug tests; currently had short-term housing, but had spent much of the recent months in motels; had been employed for a week and a half; did not have stable transportation; did not have a driver's license; had not regularly attended co-occurring treatment or grief counseling; had both positive and negative drug screens; and had not been to MC4's school or even returned the school's telephone calls regarding MC4's continuing extreme behavior and numerous suspensions. The court ordered the Department to contact two relatives of the children's father for possible placement of the children; meet with Jessica to assist her with budgeting; and hold a transitional youth services staffing for MC4, who was currently in a juvenile detention center. The court found that the Department was in compliance with the plan and court orders and was making reasonable efforts to provide family services and finalize a permanency plan. The court continued the concurrent goals of reunification and adoption after termination of parental rights.

On February 2, 2024, the Department filed a petition to terminate parental rights as to all four of Jessica's children. On April 2, 2024, it filed an amended petition seeking

7

termination of parental rights only as to the three youngest children. The Department sought termination based on three grounds:

> Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2023): that the children had been adjudicated dependent-neglected and continued out of the parent's custody for over twelve months, and despite meaningful efforts by the Department, the conditions that caused removal had not been remedied by the parent;

> Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a): that factors arose subsequent to the filing of the original petition for dependency-neglect, and despite the offer of appropriate family services, the parent manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevented placement in her custody; and

> Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a): that the parent had subjected the juveniles to aggravated circumstances.

The hearing on the amended petition to terminate parental rights took place on May 16, 2024. The testimony and evidence at the hearing was that Jessica had failed to obtain and maintain stable housing, and she frequently lived in motels: she and the children had lived in five different motels during the month of August 2023. She did not have reliable transportation and failed to maintain a valid driver's license. She had not maintained stable employment and income; however, at the time of the hearing she had been working varying hours with the same employer for almost three months. Jessica regularly participated in visitation with the children.

Jessica went through drug-and-alcohol assessment but did not complete treatment. Exhibits introduced at the hearing show that she missed five therapy sessions and one medication appointment between November 13 and December 5, 2023. She attended no

required group therapy sessions during the same time frame. The therapist noted that Jessica had made no progress in treatment. An April 1, 2024 report from the Guidance Center stated that Jessica "no-showed" for therapy sessions on February 22 and 28, and March 14 and 20, 2024. She had attended zero of the required twelve group-therapy sessions and attended only six of the required weekly individual sessions since November 1, 2023. The report noted that Jessica was "not currently active in the treatment program thus losing gains." Jessica's caseworker testified that Jessica had made twenty-one counseling appointments and attended only seven of them.

Throughout the case, Jessica's drug tests had been both negative and positive for illegal drugs at different times. She had many negative drug screens that were considered valid. However, she also had one that was considered invalid for not being the right temperature, and there were other times when she "could not go" in order to provide a test specimen. Moreover, there was testimony that Jessica did not always make herself available for testing as ordered. A hair follicle test collected on September 19, 2023, was positive for amphetamines and methamphetamine. Jessica had a drug screen on February 1, 2024, that also was positive for methamphetamine. A follow-up hair follicle test collected on February 27, 2024, was positive as well. The Department was unable to perform any drug tests on Jessica between February 2024 and the week before the termination hearing due to Jessica's failure to cooperate with the Department. The drug screen the week before the hearing was negative.

9

The Department put on evidence of the services it had provided or made available to Jessica through referrals. It provided parenting classes, bus passes, drug testing, drug-and-alcohol assessment, drug treatment, grief counseling, and general counseling and therapy. The Department also connected Jessica with organizations that could assist her with transportation, housing, and employment. The caseworker testified that Jessica failed to complete or take advantage of the services provided. She had not made meaningful progress. Under these circumstances, the caseworker did not think there was any reason to continue the services.

The Department presented evidence as to the best interest of the children. The caseworker testified that in her opinion, it would be detrimental to return the three young children to their mother because she still used methamphetamine from time to time, did not have stable housing or transportation, had not completed grief counseling, and had not completed drug treatment. She thought the children's return to Jessica would be detrimental to their emotional-, mental-, and physical-health needs. The outpatient mental-health therapist who saw the children on a regular basis testified that they need stability that they did not have with their mother. According to the therapist, the children were anxious about what was going to happen to them and needed to move on to permanency. The therapist's opinion was that Jessica was not equipped to adequately parent the three children. The Department also presented evidence that the three children are adoptable. The caseworker testified that they are sweet and fun to be around. Moreover, the Department's data match showed there were eighteen families interested in adopting the three children together.

The court entered its order terminating parental rights on June 24, 2024, finding that the Department had met its burden of proof on all three statutory grounds. The court also determined that termination of parental rights was in the best interest of the children after considering the potential for harm if the children were returned and the likelihood of adoption. Jessica timely appealed.

Appellant's arguments on appeal amount to a challenge to the sufficiency of the evidence. Jessica argues that the court lacked clear and convincing evidence to terminate her parental rights, and the Department did not prove it was in the best interest of the children. We disagree.

"A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)." *Boomhower v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 397, at 7, 587 S.W.3d 231, 235. This court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Jennings v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 429, 636 S.W.3d 119; *Ring v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 146, 620 S.W.3d 551. A finding is clearly erroneous when, even though there is evidence to support it, "the reviewing court on the entire evidence is left with a definite conviction that a mistake has been made." *Jennings*, 2021 Ark. App. 429, at 7, 636

S.W.3d at 124. We do not reweigh evidence because credibility determinations are for the circuit court, not the appellate court. *Boomhower*, *supra*.

The first ground on which the circuit court based its decision was Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*):

> That the juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

The children in this case were removed from their mother's custody on May 30, 2022, and were adjudicated dependent-neglected due to their mother's inadequate supervision and unfitness due to drug usage. Though they lived with their mother on a trial basis from April to August 2023, they were out of her custody for over two years.

Over the two-year course of the case, Jessica failed to maintain stable housing, transportation, and employment. Though she often passed drug screens, she also failed them from time to time, including testing positive for methamphetamine in September 2023 and again in February 2024. And, due to Jessica's failure to keep the Department informed of her whereabouts and make herself available, the Department was unable to conduct drug testing between February and early May 2024. Jessica underwent inpatient drug-and-alcohol treatment but failed to complete her outpatient treatment. She failed to participate in her therapy sessions at the Guidance Center. She never completed her grief counseling. During the time that Jessica had her children on a trial basis, she lost her housing, requiring her to live in various hotels. It was during a stay at a hotel on August 24, 2023, that she let her three

young children run around the hotel unsupervised at 10:30 p.m., refusing to come out of her room to supervise or retrieve them. She also failed to get them to school regularly and on time.

Jessica did not substantially comply with the case plan, failing to demonstrate meaningful progress towards the goal of reunification. Meanwhile, the Department made reasonable efforts to rehabilitate Jessica and correct the conditions that caused the children's removal. It provided ample services and referrals ranging from counseling and treatment to bus passes and payment for motel stays. Clear and convincing evidence supports the circuit court's determination that the grounds for termination found in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) were met.

The circuit court need only find one statutory ground in addition to the best-interest determination in order to terminate parental rights. Ark. Code Ann. § 9-27-341(b)(3)(B); *Boomhower*, *supra*. Since clear and convincing evidence supports the circuit court's finding that the children were out of Jessica's custody for over a year and that, despite the Department's meaningful efforts, Jessica had not been rehabilitated and had not remedied the conditions that caused removal, we will not address the remaining two statutory grounds.

We now turn to the best interest of the children. Before entering an order forever terminating parental rights, the circuit court must find by clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A); *Phillips v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 169, 596 S.W.3d 91. In determining best interest, the

13

court must consider the potential harm if the child is returned to the parent and the

likelihood of adoption. *Id.* The court in *Phillips* explained:

> Potential harm, as well as adoptability, is merely a factor to be considered—it
> is not an element of the cause of action and need not be established by clear
> and convincing evidence. *Chaffin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App.
> 522, 471 S.W.3d 251. It is the best-interest finding that must be supported by
> clear and convincing evidence. *Id.* The harm referred to in the statute is
> "potential" harm; the trial court is not required to find that actual harm will
> result or to affirmatively identify a potential harm. *Id.* Moreover, evidence on
> this factor must be viewed in a forward-looking manner and considered in
> broad terms. *Id.* A parent's past behavior is often a good indicator of future
> behavior and may be viewed as a predictor of likely potential harm should the
> child be returned to the parent's care and custody. *Rickman v. Ark. Dep't of
> Hum. Servs.*, 2018 Ark. App. 261, 548 S.W.3d 861.

*Id.* at 5–6; 596 S.W.3d at 95–96. The court is not required to find actual harm would occur,

but rather, there is potential harm. *Id.*

Jessica focuses only on the potential-harm prong in arguing the circuit court erred in

finding that termination of parent rights was in the best interest of her three youngest

children. We disagree that the circuit court erred.

In the present case, the court considered, at least in part, Jessica's long history of use

and abuse of illegal drugs in finding potential harm if the children were returned to her.

This was entirely appropriate. In *Furnish v. Arkansas Department of Human Services*, 2017 Ark.

App. 511, at 13–14, 529 S.W.3d 684, 692, we explained:

> The court's potential-harm analysis was not clearly erroneous. In considering
> potential harm caused by returning the child to the parent, the trial court is
> not required to find that actual harm would result or to affirmatively identify
> a potential harm. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d
> 918. Potential harm must be viewed in broad terms, including the harm the
> child suffers from the lack of stability in a permanent home. *Martin v. State,*

14

2017 Ark. 115, 515 S.W.3d 599. Here, Furnish's continued drug use itself is sufficient to support the trial court's finding of potential harm. Caselaw is clear that a parent's continuing use of illegal drugs poses a risk of harm to the children if returned to that parent. *Howell v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 154, at 6, 517 S.W.3d 431, 435. Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233.

Jessica struggled to stay clean over the course of the pending case, testing positive for methamphetamine in September 2023 and again in February 2024. She also made herself unavailable for testing for months at a time. This past behavior can be considered a predictor of future behavior, and a parent's continuing use of illegal drugs poses a risk of harm to her children.

In addition to Jessica's struggle with illegal drugs, the evidence at the hearing was replete with proof of Jessica's inability to maintain stable housing, transportation, and employment. The evidence supported the determination that she failed to comply with the case plan and court orders. Jessica also had a failed trial home placement due at least in part to her inability to provide a stable place for her children to live. All of these factors can be considered and support a determination that returning the children to Jessica was not in their best interest. *See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915 (lack of stability, failure to comply with court orders, and failed trial home placement supported finding of potential harm). We cannot say that the circuit court's potential-harm finding was clearly erroneous.

There was also evidence that there were eighteen families who were interested in adopting the three children together. The adoptability prong of the best-interest analysis was unrefuted.

Because there was ample proof in this case on both the statutory grounds for termination and the best interest of the children, we cannot say the circuit court clearly erred in terminating Jessica's parental rights. Accordingly, we affirm.

Affirmed.

WOOD and BROWN, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.